## IN UNITED STATES DISTRICT COURT
## <u>FOR THE DISTRICT OF MARYLAND</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO.  BAH-25-059** |
| **RYAN CHRISTOPHER HALL,** | *(Filed Under Seal)* |
| **Defendant.** | |

### <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

Ryan Christopher Hall stands before this Court having plead guilty to exploiting and molesting ██████████████████████████ ("Minor Victim 1") and ██████████████ ("Minor Victim 2") while they were young girls and into their teenaged years.  The Defendant was ███████████████████ was also a detective with the Harford County Sheriff's Office – the position of power and trust he had over these little girls cannot be overstated.  As ███████████ a law enforcement officer, the Defendant's special role as a protector and a place of safety was nothing more than a sham when viewed through the prism of his crimes.



████ (9Y) and ████ (11Y), ████████

1

According to the sentencing guidelines, the Defendant faces a maximum penalty of life or a life equivalent sentence. It is the Government's recommendation that this Court sentence him to 40 years, or 480 months, of imprisonment to the Bureau of Prisons followed by a lifetime period of supervised release.

## I.  BACKGROUND

On December 8, 2025, the Defendant pled guilty to two counts of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a), (e). The Defendant entered into his plea agreement under Fed. Rule 11(c)(1)(C); by stipulation of the parties, the appropriate sentencing range is no less than twenty-five (25) years and no more than forty (40) years.

The sentencing hearing on this matter is scheduled for March 3, 2026. United States Probation Officer Ashley Crouch prepared the Presentence Report (PSR), which provides for a final offense level of 43, a criminal history category I, and an advisory guidelines sentence of life imprisonment, which defaults to 60 years, or 720 months, as the maximum possible penalty. The Government agrees with the guideline calculation in the Pre-Sentence Report (ECF 22).

## II.  FACTUAL BACKGROUND

As described fully in the Agreed Statement of Facts (ECF 19) the Defendant sexually abused Minor Victim 1 and Minor Victim 2 when the two girls were little. Later, the Defendant found another way to exploit ███████ by resorting to surreptitious recordings of them.███ ███████████████████████████████████████ now a window for the Defendant so that he could continue his own sexual gratification… for years.

**A. Minor Victim 1 – ███████████**



████ (10Y) ███████

Minor Victim 1, ████████████, ████████████████████████████
████████████████████████. Minor Victim 1 told investigators that she
has thought about her abuse almost every day since it stopped when she was approximately 12
years old. ██████████████████████████████████████
████████████████████████████.

 Minor Victim 1's earliest memories involve being molested ████████. ████████
█████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████████



During some of these instances, Minor Victim 1 was aware that the Defendant was photographing her genitals.

The Defendant ceased touching Minor Victim 1.

Unfortunately, the nightmare did not end at that point. The Defendant found a way to continue his abuse by installing the cameras. In Count 1 of the indictment (ECF 1), Minor Victim 1, then approximately 13 years old, is depicted with the Defendant.

In Count 2, Minor Victim 1, 16 years old, was in the the Defendant's surreptitious camera captured Minor Victim 1 In Count 5, Minor Victim 1, 17 years old, is captured, . In Count 6, Minor Victim 1, 14 years old, , and the Defendant's surreptitious camera captured Minor Victim 1 . The Defendant downloaded these and many other images, saved them in a folder labeled "▇" put them onto an SD card, and hid the SD car in his vehicle for portable viewing, described further below.

---

[1] Carroll County Sheriff's Department, supplemental report dated 11/4/24, at page 16.

### B.  Minor Victim 2 – ███████████



████ (11Y), ████████

Minor Victim 2, ███████████ is the person who launched this entire investigation. On October 7, 2024, ██████████████████████████, she discovered a small camera near the heating unit.  She called ████████████████████ law enforcement because ██████████ suspected that the Defendant had installed that camera. The camera was angled toward the toilet and the shower area, and the wires ran through a hole in the floor to the basement which led to the Defendant electronics setup that allowed him to download and store surreptitious videos.

Minor Victim 2 told law enforcement then that ██████ had molested her from a young age until she was around age 12.  Minor Victim 2 began to cry and was shaking as if from cold when she first met with investigators on that October day.

Minor Victim 2 was interviewed a few days later.  She told investigators that when she was ten years old, the Defendant began to sexually abuse her. █████████████████ ████████████████████████████████████████████████



The Defendant also produced surreptitious images of Minor Victim 2. In Count 3, Minor

Victim 2 was approximately 16 years old; the ████████████████████████ In Count 4,

Minor Victim 2, approximately 17 years old, was taking a shower ███████████████

████████████████████████████████

### C. The Defendant's Collection of Videos

To be clear, the Government limited the Indictment to 6 counts of Sexual Exploitation of

a Child because, after a certain point, the sentencing guidelines do not change and are not

affected by the number of videos. There were literally thousands of surreptitious videos and still

shots, often categorized by folders marked ████████."

The Defendant was cautious and careful in his work. As a sheriff deputy with the

Harford County Sheriff for 27 years, the Defendant had some specialized knowledge with

electronics as well as stealth, concealment, and covertness.



(A screenshot from a video called "pretty.girls16" showing the Defendant adjusting the bedroom covert camera)



(A deleted image that was recovered of the Defendant adjusting the bathroom covert camera)

To accomplish his crimes from the Indictment, the Defendant installed the camera in the bathroom by drilling a hole in the grout on the floor under the heating unit:





The camera's wire then ran into the basement to a crawlspace in the unfinished laundry room area.  When officers located this area, there were shelves and a stepstool chair stacked in a manner that would allow access to the crawl space.  In the crawl space, the external device for the camera was found, set in the "on" position but with no SD card in the allocated slot.







After capturing, downloading, and saving these videos ▮▮▮▮▮▮▮, the Defendant likely knew that keeping the files or viewing them while at home would increase the chances of being caught, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Instead, the Defendant stored his collection on portable USB thumb drives and SD cards.  These external storage devices were kept in his personal vehicle along with a Samsung device.  The thumb

drives and SD cards containing the collections of child sexual abuse materials (CSAM) were found in the sunglasses compartment in the ceiling of the car; the cell phone was found in the glovebox:







These items were found during the search of the Defendant's personal vehicle, along with web camera (an upgrade, brand new, and in the box) consistent with the type of wireless camera seized ████████ ████████ ████████



The Defendant had a particular skill set and knowledge because of his role as a law

enforcement investigator – he was able to commit his exploitation crimes undetected for years, from at least 2012 until the day he was caught in 2024.  This resulted in literally thousands and thousands of videos, and multiple screenshots from the videos, often sorted into folders marked ███████ as well as an accumulation of commercially available CSAM.  Digital forensics analysis has resulted in over 87,000 files of CSAM.

## III.  <u>ARGUMENT</u>

The Defendant's conduct was disturbing and shows the worst of human nature.  This conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands a sentence of 40 years imprisonment and lifetime supervision.  "In sentencing a Defendant, first the district court 'shall consider ... the kinds of sentences and the sentencing range established for ... the applicable category of offense committed by the applicable category of Defendant as set forth in the guidelines.' 18 U.S.C. § 3553(a)(4)(A)."  Regarding sentencing, the Supreme Court states, "the Guidelines should be the starting point and initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  The Guidelines are the "natural starting point from which the sentencing court exercises its discretion under § 3553(a).  *United States v. Langford*, 516 F.3d 205, 212 (3d Cir.2008).  This Court therefore "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual Defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter."  *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the Defendant.  Additional factors outlined in section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the

11

offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the Defendant; and to provide the Defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Another factor that Section 3553(a) considers are similar sentences for similarly situated Defendants for to avoid sentence disparities.  18 U.S.C. § 3553(a)(6).  Consideration of these factors necessitates a 40-year sentence.

### A.  Nature and circumstances of the offense

The serious nature and circumstances of the offenses, described more fully above and in the Statement of Fact, calls out for a sanction sufficient to reflect the Defendant's conduct. 18 U.S.C. § 3553(a)(1).  The Defendant has a sexual attraction to children, which is evident because of his abuse and exploitation of Minor Victim 1 and Minor Victim 2 as well as his prolific collection of commercially available CSAM.  Some of those commercially available CSAM files include:

1. A video of a 4–7-year-old female naked and touching herself;
2. A GIF file of a 4–7-year-old female doing a handstand in a dress; she falls down and her genitals are exposed;
3. An image file of a 4–7-year-old female laying on her side naked with her genitals exposed;
4. A video file of a 6–10-year-old female laying in bed naked with her genitals exposed; an adult male digitally penetrates her; and
5. A video file of an 8–10-year-old female who disrobes and then inserts a curling iron in her anus, removes it, and inserts a toothbrush in her anus and then her vagina.

████████████████████████████████████████ The Defendant was trusted in the community as a Major Crimes and Domestic Violence detective for almost three decades.  He assumed ████████ important vocations in our society – ██ vocations that instinctively ask a person to protect, to serve, to honor, and to aid.  Instead, the Defendant violated these ███ roles: ████████████████████████████

███████████████████. And he used his calling as a law enforcement officer to use his specialized knowledge to exploit them further and avoid detection. Not only did he abuse two very young children, but the Defendant also documented that abuse and later captured images of these children in their most intimate and private moments as adolescents.

### B. History and characteristics of the Defendant

The Defendant has no prior criminal record. ████████████████████████████ ████████████████████████████. He was educated and had been employed for 27 years as a detective with the Harford County Sheriff's Department, mostly in the Major Crimes section. Ironically, in the final two years of his career, the Defendant served in the Domestic Violence Unit within the Department. (ECF 22, ¶¶ 116, 118, 119, and 120). ██



---

█ ██ https://www.cdc.gov/child-abuse-neglect/about/about-child-sexual-abuse.html#:~:text=At%20least%20one%20in%20four,6 (At least one in four girls and one in twenty boys in the United States experience child sexual abuse, with references to other studies).

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ █████████████████████████████████

█████████████████████████████████.”[4]  There is no reason, mitigation, or

excuse for the Defendant's deliberate choice to sexually abuse and exploit ████████████████

for years and years.

When the Defendant was arrested and given his Miranda rights, he initially waived his

rights but stated he did not want to talk about the incident itself.  Investigators asked the Defendant

to explain the installed camera ██████████████, and the Defendant answered with stoic

silence.  He was asked if he had ever sexually abused ████████████ or touched them

inappropriately, and the Defendant shook his head "no" emphatically. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████ It

was then that the Defendant admitted to installing the camera because he "had a problem," but

would not elaborate on what the problem was, except to say something was "broken in his head."[5]

The Defendant confirmed how and where he stored the CSAM files and stated that he had not

uploaded, shared, or posted any of the files.

### C.  The need for the sentence imposed.

---

[3] Briggs, F. and R. Hawkins, *A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders*, Child Abuse & Neglect 20(3), 230 (1996).
[4] Glasser, M. et al., *Cycle of child sexual abuse: links between being a victim and becoming a perpetrator,* The British Journal of Psychiatry 179, 488 (2001).
[5] Carroll County Sheriff's Office, supplemental report, dated 11/4/24, at page 11.

There can be no doubt the "prevention of sexual exploitation and abuse of children constitutes a government objective of *surpassing importance*." *New York v. Ferber*, 458 U.S. 747, 757 (1982) (emphasis added). Quite simply, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." *Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito, J., dissenting) (quotation marks omitted).

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *Irey*: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d at 1206. The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just deserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the Defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)).

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *Sarras*, 575 F.3d at 1220 (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a significant sentence

1.  **Reflect the seriousness of the offense, promoting respect for the law, and provide just punishment.**

This Court's sentence must consider the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). The Defendant's actions violated federal law, but they also transgressed every conceivable normative principle undergirding our laws. What's worse, the Defendant was ███ ████████ a police officer – by nature and by choice, he took on roles in the community ███████████ to protect and serve. The Defendant made a mockery of those roles, choosing instead to violate ███████████ repeatedly for years. This Court's sentence must express an appropriate level of social condemnation of his crimes.

2.  **Adequate deterrence and need to protect the public.**

Deterrence is important for crimes involving the sexual abuse of children, including the production of child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See Id*. The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003).

The Defendant exhibited a continual pattern of exploitation and abuse of ███████; all of these allegations went un-reported for years, no doubt due to the Defendant's position ███ ███████████ and his employment as a police officer. There is a strong need to protect the public from any further violations – the Defendant did not stop committing this crime of his own volition. Other offenders, as well as the Defendant, need to know and understand their abuses will be caught, and they will be punished accordingly no matter the passage of time or delay in a child's disclosure

**D.  Need to Avoid Sentencing Disparities**

The sentence imposed in this case should be consistent with alike cases among defendants with similar records.  The Government submits that a 480-month sentence in this case would be consistent with other cases in the District of Maryland.  This is obviously not an "apples to apples" or matching-game comparison, as the 3553(a) factors in this case are unique and should be analyzed as such.  The avoidance of disparity mirrored in any other cases provided to the Court should be used only as a guidepost not a mandate.

In *United States v. William Joseph Murrow,* JRR-24-052, the defendant exploited and sexually abused ███████████████████ over an 18-month period.  The defendant had no prior convictions and was sentenced to twenty-five (25) years in prison for one victim over a shorter period of time.

In *United States v. Dennis Harrison,* JKB-22-37, the defendant recorded sex acts with a 12-year-old victim using a hidden camera and made hidden camera videos of another child ███ ██████████████ over a period of one to two years.  This defendant had a prior conviction for possession of child pornography.  Judge Bredar imposed a sentence of forty-five (45) years.

In *United States v. Heather Clark and Nicholas Bryson,* BAH-22-228, the defendants, ███ ██████████████ sexually abused the victim over several years, from when the victim was the age of four through age eleven.  Both defendants were given sentences of forty (40) years.

In *United States v. Jason Brueggeman*, LKG-22-227, the defendant surreptitiously took images and videos of the minor victim while she was nine years old up to fourteen years old while ███████████████.  No hands-on offenses occurred.  The defendant was given a sentence of twenty (20) years.

**E.  Impact on the Victims**

It is axiomatic that sexual abuse (particularly hand-on sexual abuse, which was experienced

by the minor victims) inflicts upon its victim enormous, devastating, and long-lasting harm. That the abuse is inflicted on a child adds a devastating dimension to the harm ordinarily inflicted on rape victims. As the Supreme Court explained while addressing an Eighth Amendment challenge to capital punishment for the rape of a child by her stepfather in *Kennedy v. Louisiana*:

> [...] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood.... Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

554 U.S. at 435 (citing various studies). Those years of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide. *Id*. at 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting). Sexually exploited children also struggle to develop healthy affectionate relationships, they suffer from sexual dysfunctions, and they have a tendency to become sexual abusers themselves. *See New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982) (citation omitted).

Minor Victim 1 and Minor Victim 2 suffered greatly and continue to deal with the ripple effects of the abuse – the shame, the humiliation, the broken-ness, and the devastation. The Defendant relentlessly stole the minor victims' innocence and childhood; their sense of safety was decimated. He did not show mercy; the Defendant merely changed tact when he realized the two children might not keep his secret forever – ██████████████████████████████ ██████████████████████████████. The Defendant likely understood, from his work, how disclosures unravel – so he knew to avoid having the girls say anything more, he had to find another way to get the sexual gratification from them that he demanded.

The collateral damage to those around the minor victims is expansive. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████

His conduct must be adequately punished.  A sentence of 40 years, followed by lifetime supervised release, adequately accounts for the §3553(a) factors.  The sentence imposed by this Court should leave no doubt that when the Defendant is one day released from incarceration, he will hesitate to exploit or abuse another child again; such a sentenced should also send the message that child molesters, especially those in positions of trust ████████ within the community, will receive a significant sentence.

### F.  Restitution and Forfeiture

The Government does not anticipate restitution requests from Minor Victim 1, Minor Victim 2, ████████  The Government may have restitution requests from the commercially available CSAM victims and is waiting for that information from NCMEC to provide to counsel and the Court.

The Government will be submitting a preliminary order of forfeiture for the devices described in the Indictment (ECF 1).

### IV.  <u>CONCLUSION</u>

The Defendant sexually abused and exploited the minor victims over an extended period

of time – as little girls and well into their teenaged years.  When the girls became too old to sexually assault, the Defendant switched to surreptitious exploitation in order to continue gratifying himself. The position of trust ████████████ within the law enforcement community was grossly violated by these offenses over and over again, for more than a decade.

The lives of Minor Victim 1, Minor Victim 2, █████████████████ and so many others, are forever changed by the Defendant.  The United States requests that this Court should sentence the Defendant to 40-year imprisonment.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:  _____
Colleen Elizabeth McGuinn
Assistant United States Attorney